**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERCIA,<br><br>Plaintiff,<br><br>v.<br><br>KATHERINE MOGAL, et al.,<br><br>Defendants. | Case No. 18-cr-259-BLF<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO SEVER MISJOINED DEFENDANTS OR, IN THE ALTERNATIVE, FOR RELIEF FROM PREJUDICIAL JOINDER**<br><br>[Re: ECF 68] |

On June 14, 2018, Defendants Katherine Mogal, Ana Rosario, Patrick Narron, Patricio Romano, Rong "Audrey" Zhang, and Jing Qui "Gee" Weiden were jointly charged in a single indictment with one or multiple counts of unlawful possession of stolen trade secrets under 18 U.S.C. § 1832(a)(3). Before the Court is Defendants' joint motion to sever misjoinder defendants under Federal Rule of Criminal Procedure 8(b), or, in the alternative, for relief from prejudicial joinder under Federal Rule of Criminal Procedure 14(a). The Court held a hearing on the motion on February 26, 2019. For the reasons stated on the record at the hearing, and as set forth below, the motion is GRANTED because Defendants were misjoined under Rule 8(b).

**I. BACKGROUND[1]**

The Government filed the indictment in this trade-secret-misappropriation action on June 14, 2018, charging each Defendant with at least one count of unlawful trade secret possession. *See generally* Indict., ECF 1. Each Defendant left his or her work at AliphCom, Inc. (d/b/a

---

[1] Because resolution of the motion turns on the allegations in the indictment, the Court recites those factual allegations here. In reciting the allegations, the Court makes no opinion as to their truth or falsity or the Government's ability to prove them at trial.

Jawbone) ("Jawbone") and subsequently began working at Fitbit, Inc. ("Fitbit"). Jawbone "designed, manufactured, and sold wearable electronic devices, fitness trackers, and wireless speakers." *Id.* ¶ 1. Fitbit is a "wearables brand" that "design[s] products and experiences that track and provide motivation for everyday health and fitness." *Id.* ¶ 2. Fitbit is not a defendant here.

Defendant Katherine Mogal worked at Jawbone as Director of Market and Customer Experience Insights from July 17, 2013 – March 17, 2015. *Id.* ¶ 3. On March 13, 2015, Fitbit offered her employment, and she accepted and then resigned from Jawbone. *Id.*

Defendant Ana Rosario worked at Jawbone as Design and User Researcher from April 22, 2014 – April 23, 2015. *Id.* ¶ 4. On April 17, 2015, Fitbit offered her employment, and she accepted and then resigned from Jawbone. *Id.*

Defendant Patrick Narron worked at Jawbone as Senior Audio Engineer from August 29, 2011 – April 22, 2015. *Id.* ¶ 5. On April 5, 2015, Fitbit offered him employment, and he accepted and then resigned from Jawbone. *Id.*

Defendant Patricio Romano worked at Jawbone as Product Design Engineer from November 11, 2013 – March 17, 2015. *Id.* ¶ 6. On March 13, 2015, Fitbit offered him employment, and he accepted and then resigned from Jawbone. *Id.*

Defendant Rong "Audrey" Zhang worked at Jawbone as Senior Supply Chain Manager from July 23, 2012 – April 5, 2015. *Id.* ¶ 7. On March 23, 2015, Fitbit offered her employment, and she accepted and then resigned from Jawbone. *Id.*

Defendant Jing Qui "Gee" Weiden worked at Jawbone as Engineering Product Manager from May 20, 2011 – March 21, 2014. *Id.* ¶ 8. After she resigned from Jawbone, she began working for Fitbit in November 2014. *Id.*

Each Defendant signed an employment agreement with a confidentiality clause when he or she began working at Jawbone, and each Defendant except Zhang signed a certification that he or she had returned all Jawbone property when he or she resigned. *Id.* ¶¶ 3–8.

No later than the date of their respective resignations until approximately October 2015, each Defendant is alleged to have "knowingly received and possessed" certain Jawbone trade

secrets, "knowing them to have been stolen and appropriated, obtained, and converted without authorization, with the intent to convert the trade secrets, which were related to and intended to be included in products to be produced for and placed in interstate and foreign commerce, to the economic benefit of someone other than Jawbone, and intending and knowing that the offense would injure Jawbone." *Id.* ¶ 12. In total, Defendants are charged in various groupings in 14 counts of unlawful trade secret possession, with each count relating to a different Jawbone trade secret. The alleged trade secrets, which all relate in some way to "research, development, production, and sale of personal health tracking devices and other 'wearable' electronic devices," *id.* ¶ 9, are summarized here:

A. **Audio Now Study**: survey of users of small-form speaker products
B. **Chinese User Market Study**: study of Chinese consumers
C. **Vendor and Pricing Information for International Suppliers**: lists and schedules of Jawbone's vendors
D. **Schematics, Design Specifications, and Detailed Description of Unreleased Fitness Headphone**: emails, drawings, and other files detailing the specific combination of sensors to be integrated into unreleased "Heisenberg" headphones product
E. **Emails, Presentations, and Design Documents Related to Heisenberg Headphones**: documents describing features of unreleased Heisenberg headphones
F. **Three-Dimensional Drawing of HRM and Driver Locations and Heisenberg Sensor Boards Schematics**: drawings containing layout and design of parts of Heisenberg headphones
G. **Internal Email and Attachment Regarding Heisenberg CAD**: A computer-aided design ("CAD") file containing technical information for Heisenberg headphones
H. **Jawbone NPI COGS Refresh and Supporting Spreadsheet with Unit Profit and Loss Forecast**: detailed financial data relating to multiple products
I. **Spitz Parts, Material, Process, Site/Vendor, Cosmetic, Volume, and Pricing Spreadsheet**: detailed data relating to Jawbone's costs and liabilities
J. **Daily Diary Study**: 18-participant study relating to user preferences for wearable devices, including comparisons of Jawbone and Fitbit products
K. **User Segmentation Study**: study of 1400 Jawbone users
L. **Lifestyle Tracker Shopper Journey Study**: study of fitness-tracker owners
M. **International Tracker Market Study**: study of 1500+ European Jawbone users
N. **Headphones Owner Survey and Workout Headphones Survey**: survey of headphones owners

3

*Id.* ¶ 10a–n. The following chart demonstrates which trade secret(s) each Defendant is alleged to have unlawfully possessed:

|  |  | **Alleged Trade Secret** | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  |  | A | B | C | D | E | F | G | H | I | J | K | L | M | N |
| **Defendant** | Mogal | X | X |  |  |  |  |  |  |  | X | X | X | X |  |
|  | Rosario | X | X |  |  |  |  |  |  |  | X | X |  |  | X |
|  | Weiden |  |  | X |  |  |  |  |  |  |  |  |  |  |  |
|  | Narron |  |  |  | X | X |  |  |  |  |  |  |  |  |  |
|  | Romano |  |  |  | X | X | X | X |  |  |  |  |  |  |  |
|  | Zhang |  |  |  |  |  |  |  | X | X |  |  |  |  |  |

*Id.* ¶ 12. As reflected in the chart, all Defendants except Weiden are charged with possessing more than one trade secret, and all Defendants except Weiden and Zhang are charged with possessing at least one of the same trade secrets as another Defendant. However, no two Defendants are alleged to have possessed the same set of trade secrets, and no more than two Defendants are alleged to have possessed any one trade secret.

## II. MOTION TO SEVER MISJOINED DEFENDANTS (RULE 8(b))

### A. Legal Standard

Federal Rule of Criminal Procedure 8(b) provides:

> Joinder of Defendants. The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

In contrast to Rule 8(a) which allows joinder of multiple counts for a single defendant if the offenses are "of the same or similar character," Fed. R. Crim. Proc. 8(a), joinder under Rule 8(b) is allowed only where "all offenses arise out of the same series of acts or transactions." *United States v. Sarkisian*, 197 F.3d 966, 975 (9th Cir. 1999) (citation omitted). The Ninth Circuit has held that "the term 'transactions,' has a flexible meaning and that the existence of a 'series'

depends on whether there is a logical relationship between the transactions." *United States v. Felix-Gutierrez*, 940 F.2d 1200, 1208 (9th Cir. 1991) (citation omitted).

A logical relationship may not be shown by "[m]ere factual similarity of events," *United States v. Ford*, 632 F.2d 1354, 1372 (9th Cir. 1980), including through "a mere showing that the events occurred at about the same time, or that the acts violated the same statutes" or "a mere similarity in the manner in which several offenses are carried out" (*i.e.* the "modus operandi"). *United States v. Satterfield*, 548 F.2d 1341, 1344, 1345 (9th Cir. 1977). By contrast, a logical relationship "may be shown by the existence of a common plan, scheme, or conspiracy," *Ford*, 632 F.2d at 1372, or where "substantially the same facts must be adduced to prove each of the joined offenses," *Satterfield*, 548 F.2d at 1344. While "the plan, scheme, or conspiracy need not be charged on the face of the indictment" *Ford*, 632 F.2d at 1372, the Ninth Circuit has held that "the established rule in this circuit is that a valid basis for joinder should be discernible from the face of the indictment." *United States v. Jawara*, 474 F.3d 565, 573 (9th Cir. 2007) (in Rule 8(a) context); *see also Satterfield*, 548 F.2d at 1344–45 (relying on allegations in indictment in Rule 8(b) context).

"Rule 8(b) is construed liberally in favor of joinder," *Sarkisian*, 197 F.3d at 975, to best serve the Rule's goal of "maximum trial convenience consistent with minimum prejudice," *Ford*, 632 F.2d at 1372. *See also Roselli*, 432 F.2d 879, 899 & n.35 (9th Cir. 1970). One significant potential for prejudice caused by misjoinder is the "high risk of [codefendants] being found guilty merely by association." *Satterfield*, 548 F.2d at 1346. The goal of balancing maximum convenience with minimum prejudice makes joinder appropriate "whenever the common activity constitutes a substantial portion of the proof of the joined charges." *Roselli*, 432 F.2d at 899.

**B.   Discussion**

As demonstrated by this legal standard, determining whether joinder is appropriate under Rule 8(b) is a fact-intensive inquiry, rendering comparisons to other cases particularly useful. For this reason, the Court briefly summarizes many of the cases cited by the parties, starting first with the cases in which courts have held the defendants were misjoined.

In *Satterfield*, two defendants (appellant Satterfield and his co-defendant Merriweather)

were charged in a single indictment for charges relating to five bank robberies. 548 F.2d at 1343. The indictment charged Merriweather alone for the first, second, and fifth robberies, but charged both Satterfield and Merriweather for the third and fourth robberies. The Government never alleged that Satterfield had any involvement in the first, second, or fifth robberies. *Id.* The jury convicted Satterfield. In an opinion by then-Judge Kennedy, the Ninth Circuit held that Satterfield had been misjoined. At the trial, most of the evidence presented "related to the first, second, and fifth robberies, which were committed by Merriweather alone"; this evidence was "strong" against Merriweather and entirely "irrelevant" as to Satterfield. *Id.* at 1345. Recognizing that "this [was] not a situation where substantially the same facts would have been adduced at separate trials" and that that there was no "nexus between each offense charged in the indictment," the Court held that the five robberies did not arise out of the same series of acts or transactions, even if the robberies "were somewhat similar in character." *Id.*

Later that same year, in another opinion by then-Judge Kennedy, the Ninth Circuit in *United States v. Martin* held that appellant Martin had been misjoined where he and his co-defendant Macias were charged together with two drug conspiracies, and Macias was also charged with two additional, separate drug conspiracies. 567 F.2d 849, 853 (9th Cir. 1977). As in *Satterfield*, the Ninth Circuit noted that Martin "was not alleged to have participated in any of the conspiracies alleged" against Macias only. *Id.* Thus, the court held that the Government "necessarily was required to adduce proof of substantially different facts in order to support conviction on the counts unrelated to Martin." *Id.*

In *United States v. Charnay*, the Southern District of New York held that three defendants were misjoined where each allegedly perjured himself to the same grand jury on the same day about the same two facts regarding the same non-party individual. 211 F. Supp. 904, 905 (S.D.N.Y. 1962). But there were "no allegations of concert of action or a common scheme" and "[n]o conspiracy [was] charged." *Id.* The court first noted that Rule 8(b) was not meant to cover defendants "merely because each is accused of the same type of offense." *Id.* at 906. It then held that though there was an "identity" between the charged offenses, the allegations did "not establish a link among all those who were sworn on the same day or that there was a nexus among the

6

alleged false answers of each defendant." *Id.* Focusing on the elements of perjury, with particular emphasis on the requirement that the Government prove the defendants' state of mind, the Court held that the facts would vary between the defendants. *Id* at 907–08.

In *United States v. Marionneaux*, the Fifth Circuit held that the defendants had been misjoined in a single indictment charging two conspiracies to obstruct justice for preventing two separate witnesses from testifying in the criminal prosecution of their co-defendant, Edward Partin. 514 F.2d 1244, 1247 (5th Cir. 1975), *overruled on other grounds by United States v. Watson*, 866 F.2d 381, 384 (11th Cir. 1989). Recognizing that "the identity or similarity of the character of offenses is not a permissible basis for the joinder of defendants under subsection (b)," the court held that the defendants had been misjoined, even though Partin was a co-defendant, one defendant performed an overt act in both charged conspiracies, and the schemes were similar in character. *Id.* at 1248–49. Other than these few facts, "the conspiracies ha[d] different participants and completely different overt actions." *Id.* at 1248.

In *United States v. Jeffries*, the District of Columbia district court held that three defendants had been misjoined on a burglary count for looting the same store at the same time because there was "no indication . . . that the defendants knew each other, entered at the same time, or engaged in any conduct by plan or agreement in advance." 45 F.R.D. 119, 120 (D.D.C 1968).

Finally, in *United States v. Whitehead*, defendant Meredith and appellant Whitehead were joined and tried together on counts of distribution of cocaine. 539 F.2d 1023, 1024 (4th Cir. 1976). The defendants lived in the same building and sold drugs to the same undercover agent on separate days with their co-defendant, Harold L. Jackson, but not with each other. Indeed, there was no evidence that Whitehead and Meredith even knew one another. *Id.* at 1024–25. Jackson eventually was tried separately, but Meredith and Whitehead were tried together. The Fourth Circuit held that the defendants had been misjoined because the mere "happenstance of residence in a common apartment building" was not sufficient to connect the defendants, nor was the common denominator of defendant Jackson. *Id.* at 1025. To hold otherwise would be akin to joining "two delinquent taxpayers who used the same accountant." *Id.*

7

Turning to the cases in which joinder was proper, in *United States v. Patterson* appellant Patterson was jointly tried with his co-defendant Aquino and convicted of twelve counts of mail fraud. 455 F.2d 264, 265 (9th Cir. 1972). In the indictment, Aquino and Patterson were each charged individually with separate counts of mail fraud for two different time periods in the same year. Their co-defendant Mortillaro was charged with aiding and abetting Aquino and Patterson in each of their individual counts. *Id.* Though each defendant allegedly acted unlawfully at different times, the Ninth Circuit noted that the mailings used by each "were practically identical" in their unique details, and thus concluded that each defendant had used the same modus operandi. *Id.*; *see Satterfield*, 548 F.2d at 1345 (describing the details of the fraud as "intricate and highly sophisticated"). Based on these facts (and evidence presented at trial bolstering them), the court held that joinder was proper because the "schemes were basically the same" and defendant Mortillaro "provid[ed] a common link between all of the defendants." *Patterson*, 455 F.2d at 266.

In *United States v. Golb*, the Ninth Circuit held that two convicted money launderers had been properly joined because they were charged together on some of the same counts; "had an ongoing business relationship"; had participated in events concerning each other's non-shared counts; "all of the charged transactions occurred within a relatively short time period and involved a common cast of characters"; and there was a "substantial evidentiary overlap between charges" because two organizations were involved in all but one count. 69 F.3d 1417, 1425–26 (9th Cir. 1995).

In *United States v. Caldwell*, the Tenth Circuit held that joinder of the appellant with other defendants on his counts of wire fraud was proper where "there was a number of common threads and much common evidence connecting offenses charged in the indictment." 560 F.3d 1202, 1212 (10th Cir. 2009). Specifically, the same "central figure" played a role in all the offenses and the defendants conducted the alleged fraud using similar means. *Id.* at 1204, 1212–13. The court also held that the indictment need not charge a conspiracy or charge each defendant on every count in order for joinder to be proper. *Id.* at 1212–13.

The Fourth Circuit in *United States v. Smith* held that joinder was proper where the co-defendants were charged with a conspiracy to distribute drugs, "had dealt drugs over the same

8

period of time in [the same] neighborhood, buying from the same suppliers and selling to the same customers," and a "substantial portion of the trial evidence" was related to the appellant's involvement in this scheme. 451 F.3d 209, 213, 218–19 (4th Cir. 2006).

Finally,[2] in *United States v. Rittweger*, in an opinion by then-Judge Sotomayor, the Second Circuit held that the defendants were properly joined where "the indictment alleged the existence of two conspiracies that shared a common plan or scheme and a substantial identity of facts or participants." 524 F.3d 171, 174 (2d Cir. 2008). The two conspiracies involved the same customers, the same "key participants" (namely, the co-defendants), and similar methods. *See id.* at 177–78.

Given this case law, the Court concludes that Defendants have been misjoined. Put simply, nothing in the indictment indicates that the charged offenses "arise out of the same series of acts or transactions," *Sarkisian*, 197 F.3d at 975, because there is no "logical relationship between the transactions," *Felix-Gutierrez*, 940 F.2d at 1208.

At most, the Government alleges that five of six Defendants left Jawbone within a five week period (and the sixth within a one year period) to subsequently work at Fitbit (an industry competitor), and that those same five accepted their offer at Fitbit while still employed at Jawbone. *See* Indict. ¶¶ 3–8. A few Defendants are also alleged to have taken the same trade secrets. And, of course, they are all alleged to have committed the same offense. That is where the similarity in the allegations against each Defendant ends.

It is not even clear that such allegations would be sufficient to meet Rule 8(*a*)'s more lenient "of the same or similar character" standard. The indictment includes very little about how each Defendant allegedly carried out the charged offenses. Though the Government alleges that the trade secrets are stored on Jawbone's computer systems and cloud storage applications, *id.* ¶ 10, it is otherwise silent as to how the alleged offenses were perpetrated, other than a conclusory allegation that each individual "knowingly received and possessed" the identified trade secrets, *id.*

---

[2] The Government also raises in its Opposition *United States v. Fernandez*, 388 F.3d 1199, 1241 (9th Cir. 2004), *as modified*, 425 F.3d 1248 (9th Cir. 2005). *See* Opp. at 6. Because that case involved Rule 14 severance, not Rule 8(b) misjoinder, the Court does not address it here.

9

¶ 12. This is easily distinguishable from cases in which the identity between the modus operandi in intricate schemes substantiated the need for joinder. *See Patterson*, 455 F.2d at 266; *Rittweger*, 524 F.3d at 174.

But more importantly, the allegations clearly fail the more stringent Rule 8(b) standard because there are few if any allegations to connect the Defendants' actions. While Defendants need not be charged together, the indictment must still allege something akin to a common plan, scheme, or conspiracy, or at least something demonstrating that proof of the offenses relies on "substantially the same facts." *See Ford*, 632 F.2d at 1372; *Satterfield*, 548 F.2d at 1344. It fails to do so here. The Government does not allege that Defendants worked together, knew of each other's conduct, or even knew each other *at all*. Many of the Defendants are not charged with taking the same trade secrets, and those that do face the same charges are not alleged to have worked together,[3] known each other, or otherwise worked in concert to take the trade secrets. (In fact, each individual in the two sets of Defendants that share counts left Jawbone nearly one month apart from one another. *See* Indict. ¶¶ 3–8 (Group 1: Narron (April 22, 2015) and Romano (March 17, 2015); Group 2: Mogal (March 17, 2015) and Rosario (April 23, 2015))). And finally, the trade secrets themselves appear to bare little relation to one another outside of the four groupings the Government has identified by charging one or two Defendants with certain counts regarding similar trade secret information (*e.g.*, user surveys). Given these disparities, any evidentiary overlap in the cases would apparently be limited; and, more importantly, on these allegations, the evidence of "*common activity*" would be almost non-existent. *See Roselli*, 432 F.2d at 899. Thus, as in *Satterfield*, *Martin*, *Charnay*, *Marionneaux*, *Jeffries*, and *Whitehead*, there are no allegations or evidence from which the Court could conclude that these Defendants' offenses are part of the same act or transaction.

Moreover, unlike in the cases allowing joinder, the Government here has not alleged that there was a common participant connecting each of Defendants' alleged offenses. Though each

---

[3] The Government represents that Defendants Mogal and Rosario worked in the same department at Jawbone, Opp. at 2, but this is not alleged in the indictment and would not change the outcome here in any event.

10

Defendant left Jawbone for Fitbit, the indictment does not allege that Fitbit somehow orchestrated a scheme in which Defendants took Jawbone's trade secrets for Fitbit's benefit. Even if the Court could infer from the indictment that Fitbit is a direct competitor with Jawbone (though that is not explicitly alleged), and even if the Court could infer that Fitbit somehow recruited each Defendant (though the indictment alleges only that five of six Defendants "received an offer of employment" from Fitbit while working at Jawbone), these two facts alone are not sufficient to demonstrate that Fitbit is a "common link between all of the defendants" or "central figure" in all the alleged offenses. *Patterson*, 455 F.2d at 266; *Caldwell*, 560 F.3d at 1212. The Government need not necessarily charge Fitbit with an offense for it to serve as a common link; but in the absence of any evidence to the contrary, the Court cannot infer that Fitbit was a bad actor here.

For these reasons, the indictment does not allege that Defendants "participated in the same act or transaction," and thus joinder is inappropriate under Rule 8(b). For the reasons discussed on the record, the Court orders Defendants severed without prejudice to the Government's amending the indictment to allege additional facts to support its argument for joinder.

### III. MOTION FOR RELIEF FROM PREJUDICIAL JOINDER (RULE 14)

Because the Court has determined that Defendants were misjoined under Rule 8(b), it need not reach Defendants' alternative request for relief from prejudicial joinder under Federal Rule of Criminal Procedure Rule 14(a).

### IV. ORDER

For the reasons set forth above, the motion to sever misjoined Defendants is GRANTED without prejudice to the Government filing a superseding indictment.

**IT IS SO ORDERED.**

Dated: March 8, 2019

_____
BETH LABSON FREEMAN
United States District Judge

11