WALTER F. BROWN (SBN 130248)
wbrown@orrick.com
MELINDA HAAG (SBN 132612)
mhaag@orrick.com
RANDALL S. LUSKEY (SBN 240915)
rluskey@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:   +1-415-773-5700
Facsimile:    +1-415-773-5759

Attorneys for Defendant
KATHERINE MOGAL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>         v.<br><br>KATHERINE MOGAL, et al.,<br><br>                    Defendants. | Case No. 18-CR-00259-BLF<br><br>**DEFENDANT KATHERINE MOGAL'S TRIAL MEMORANDUM**<br><br>Pretrial Hearing:  December 20, 2019<br>Time:                    9:00 a.m.<br>Trial Date:            January 21, 2020<br>Judge:                  Hon. Beth L. Freeman<br>Courtroom:          3 |

In accordance with the Court's Standing Order in Criminal Cases, Defendant Katherine Mogal ("Ms. Mogal"), by undersigned counsel, submits the following trial brief.

## I. INTRODUCTION

This is a simple case. It is about one defendant, Katherine Mogal, who allegedly improperly possessed six documents after she resigned from Jawbone. These six documents allegedly reflected Jawbone's trade secrets. There is no charge that Ms. Mogal (or anyone else) used the trade secrets while at Fitbit. Nor are there allegations that Ms. Mogal was part of a common plan, scheme, or conspiracy. Indeed, Fitbit is not a defendant, and Ms. Mogal's co-defendants were severed. The case against one of the former defendants, Ana Rosario, was dismissed by the government earlier this week.

We expect that the trial will revolve around the issues of intent and whether the user research studies at issue in this case constitute trade secrets.

## II. THE CHARGES

Ms. Mogal is charged in Counts One, Two, Ten, Eleven, Twelve, and Thirteen of the indictment with unlawful possesion of trade secrets in violation of Section 1832(a)(3) of Title 18 of the United States Code. To meet its burden on each Count, the government must prove each of the six elements set forth below beyond a reasonable doubt. *See United States v. Liew*, 11-CR-00573-JSW, Final Jury Instructions, Dkt. 792, Page 34.

First, the government must prove that the item alleged in each Count was a trade secret. The trade secrets alleged for each Count are as follows:

1. A 74-page document entitled "Audio Now" that relates to research Jawbone conducted related to speakers.

2. A 53-page document entitled "Getting To Know The Chinese User And Their Shopping Journey Study" that relates to a study Jawbone conducted to explore a Chinese consumer's journey to buying a fitness tracker.

3. An 18-page document entitled "Daily Diary Study," that relates to a journal study Jawbone conducted with 18 participants who used UP24 and Fitbit wristbands.

4. A 73-page document entitled "UP User Segmentation Study," that relates to a survey Jawbone conducted of UP users.

5. A 63-page document entitled "Lifestyle Tracker Shopper Journey Study," that relates to a survey Jawbone conducted of adults who used lifestyle trackers.

6. A 35-page document entitled "International Tracker Market Study," that relates to a survey Jawbone conducted of adults living in the United Kingdom and Germany.

The term "trade secret" means all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, programs, devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing, if each of three elements are proven beyond a reasonable doubt: (i) the information is actually secret because it is not generally known to or readily ascertainable through proper means by another person who can obtain economic value from the disclosure or use of the information; (ii) the owner thereof has taken reasonable measures to keep such information secret; and (iii) the information derives independent economic value, actual or potential, from being secret. *See Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit*, § 8.141C (2010 ed.) (approved 12/2017); *Liew*, 856 F.3d at 601.

Second, the government must prove beyond a reasonable doubt that Ms. Mogal knew the item alleged in each Count was a trade secret. Information that is within an employee's own personal knowledge, skill, or ability is not a "trade secret." *Id.* at 599. An employee who changes jobs is entitled to take such information with him or her and use it in his or her next job. *Id.; see also United States v. Shiah, CR 06-92 DOC (CDCA 2008)*. Moreover, information that is common knowledge and so well known or obvious that a competitor could obtain the information without making an investment, is not a trade secret. *See Self-Directed Placement Corp. v. Controlled Data Corp*, 908 F.2D 462 (9th Cir. 1990).

Third, the government must prove beyond a reasonable doubt that Ms. Mogal knowingly received or possessed the trade secrets, knowing the same to have been stolen or appropriated

without authorization, obtained without authorization, or converted without authorization. The knowledge requirement applies to all material elements of the offense. Therefore, in order to prove that the defendant acted knowingly, the government must prove: (1) that the defendant knew the information was actually secret, (2) that the defendant knew the owner had taken reasonable measures to keep the information secret, and (3) that the defendant knew the information derived independent economic value from being secret. *See Rehaif v. United States*, 139 S. Ct. 2191, 2195 (2019) (stating that when Congress includes a general scienter provision in the statute," that mens rea requirement applies "to all the material elements of the offense, unless a contrary purpose plainly appears") (internal quotation marks omitted); *United States v. Nosal*, 844 F.3d 1024, 1041 (9th Cir. 2016) (approving jury instructions requiring proof beyond a reasonable doubt that "defendant knew that the source lists were trade secrets").

Fourth, the government must prove beyond a reasonable doubt that Ms. Mogal intended to convert the trade secrets to the economic benefit of anyone other than Jawbone.

Fifth, the government must prove beyond a reasonable doubt that Ms. Mogal knew or intended that her conduct would injure Jawbone.

Sixth, the government must prove beyond a reasonable doubt that the trade secret was related to or included in a product that was produced for or placed in interstate or foreign commerce.

### III.   THE ANTICIPATED EVIDENCE

On September 24, 2019, the parties executed a Stipulation Regarding Specific Contents of Alleged Trade Secret Documents Allegedly Possessed By Katherine Mogal. Dkt. No. 115. This stipulation sets forth the specific insights and data that the government claims confers trade secret status upon the six documents Ms. Mogal allegedly illegally possessed. To meet its burden to prove beyond a reasonable down that the documents are in fact trade secrets, Ms. Mogal anticipates that the government will call Jawbone witnesses such as Jawbone's former Vice President of Product Management, Travis Bogard, and Jawbone's former founder and Chief Executive Officer, Hosain Rahman, to testify regarding these insights and data, claiming that they were confidential and valuable to Jawbone.

On August 22, 2019, the parties entered into a joint stipulation identifying the documents allegedly reflecting the trade secrets. Dkt. 102. (Stipulation and Order Regarding Identification of Documents Allegedly Misappropriated by Katherine Mogal). The stipulation indicated that "the only document[s] Ms. Mogal is alleged to have possessed in violation of 18 U.S.C. § 1832(a)(3)" were six documents (the alleged trade secrets) all of which resided in a single location: Ms. Mogal's CrashPlan account. The stipulation also identified 45 additional documents – again, all residing on the CrashPlan – as "the complete list of documents reflecting [the] Trade Secret[s] (in whole or in part) that the government may seek to introduce at trial" for purposes of Federal Rule of Evidence 404(b). To meet its burden to prove beyond a reasonable doubt that Ms. Mogal possessed the alleged trade secrets after leaving Jawbone, Ms. Mogal expects the Government to call its case agent, Mr. West, to introduce the documents reflected in the stipulation and testify that they resided on the account after Ms. Mogal left Jawbone.

Regarding intent, to meet its burden that Ms. Mogal possessed the six documents in her CrashPlan knowing them to have been stolen, and that she possessed them with the intent to convert them to the economic benefit of someone other than Jawbone, intending and knowing that her possession of these six documents would injure Jawbone, the Government is expected to offer evidence through its case agent, Mr. West.

The government recently indicated that it is also seeking to introduce testimony regarding 140 additional copies of the alleged trade secrets that allegedly reside in Ms. Mogal's Dropbox accounts, claiming that these are relevant to show intent. Dkt. 133. Ms. Mogal has objected to this untimely and unfairly prejudicial proposed evidence, which clearly violates the parties August 22, 2019 Stipulation, both in its affirmative Motion in *Limine* No. 5 (Docket No. 142) and in its Opposition to the government's First Motion in *Limine*. This evidence should not come in at trial.

The government may also attempt to offer evidence of purported intent via Ms. Mogal's response to her discovery obligations in *Aliphcom, Inc. v. Fitbit, et. al.*, Case No. CGC-15-546004 (SF Superior May 27, 2015). As discussed in Ms. Mogal's Motion in *Limine* No. 1,

discovery decisions and other litigation activities were undertaken by Ms. Mogal's attorneys, not Ms. Mogal, and in no way have any bearing on Ms. Mogal's intent. Moreover, this evidence would be unfairly prejudicial and therefore should be excluded. Dckt. No. 138.

Ms. Mogal will not know whether she will need to put forth a defense case until after the government rests, but she has identified two potential expert witnesses. First, Dr. Kevin Li, who would testify that the insights and data reflected in the alleged trade secrets were generally understood by practitioners in the industry, reflected publicly available information, and/or would not have been valuable to a competitor. Second, Andrew Crain, who would testify regarding his forensic analysis of Ms. Mogal's documentary repositories, including CrashPlan and DropBox,

## IV. LEGAL AND FACTUAL ISSUES EXPECTED TO ARISE AT TRIAL

Currently pending before the Court is Ms. Mogal's motion to dismiss the indictment, which is set for hearing on January 16 2019. This motion arises from the government's presentation of false evidence to the grand jury regarding Ms. Mogal,

In addition, both parties have already identified a number of anticipated evidentiary issues in the pending motions in limine filed on December 6, 2019, all of which are listed in the parties' Joint Pretrial Statement being filed today. The sections below discuss certain legal and procedural issues likely to arise at trial if certain of these motions are denied.

Finally, Ms. Mogal is receiving today from the government its list of witnesses and exhibits, and thus Ms. Mogal has not yet had an opportunity to identify specific legal or evidentiary issues that might arise from the government's proposed presentation of evidence. If necessary, Ms. Mogal will seek leave of the Court to file a supplemental trial brief raising any such issues.

### A. Legal and Procedural Issues Arising From the Prior Jawbone Litigation

Ms. Mogal's Motion in Limine No. 1 seeks to exclude references to prior lawsuits Jawbone brought against Ms. Mogal, the other defendants, and Fitbit, after the defendants left Jawbone to work at Fitbit. Dkt. 138. The conduct involved in the lawsuits that the government intends to present at trial relates to the search for, identification of, and return of certain documents from Ms. Mogal's personal devices. In its presentation of evidence before the grand

jury, the government relied heavily on evidence about alleged delays or deficiencies in this process, which was entirely managed by Ms. Mogal's attorneys, to establish that Ms. Mogal possessed the requisite criminal intent.  Because the work of her attorneys is utterly irrelevant to Ms. Mogal's state of mind, and because evidence about the complicated litigation history of the Jawbone lawsuits would confuse the jury and unfairly prejudice Ms. Mogal, she is seeking to exclude all references to the Jawbone lawsuits at trial.  The government filed a related motion in limine to exclude certain references and arguments to the Jawbone lawsuits; specifically, the government seeks to prevent Ms. Mogal from referring to Jawbone's loss of its trade secrets misappropriation claims before the International Trade Commission, and the fact that Jawbone thereafter approached the government to investigate Ms. Mogal and others.  Dkt. 135.

If Ms. Mogal's motion is denied, on the other hand, and the government is permitted to elicit evidence about Ms. Mogal's counsel's work in the Jawbone lawsuit, a number of complex legal issues are likely to arise surrounding the attorney-client privilege and work product doctrine. Because the key witnesses to the events of the Jawbone lawsuit were Ms. Mogal's lawyers, those lawyers will need to testify as witnesses.  Ms. Mogal will need to waive the attorney-client privilege and offer testimony from at least two Orrick attorneys and a Stroz analyst to show that (1) Ms. Mogal turned over all of her devices and accounts to Orrick and Stroz; and (2) it was they—and not Ms. Mogal—who made the strategic discovery-related decisions the government now claims bear on Ms. Mogal's state of mind.  The Court will have to determine the scope of the required attorney-client privilege and work product doctrine waivers in a separate proceeding under Federal Rule of Evidence 502.

In addition to the privilege issue, the parties will necessarily have to re-litigate the discovery issues in the Jawbone lawsuit (e.g., whether the appropriate repositories were identified, whether the productions were complete, etc.) that the government claims bear on Ms. Mogal's state of mind.  These issues were never ruled upon.  This will effectively create a trial within a trial.  As a result of this wholly irrelevant side show regarding the other litigation, the additional witnesses, and resolving all of the corresponding privilege issues, these proceedings will likely extend the length of the trial beyond the two weeks allotted by the Court.

B. **Legal and Evidentiary Issues Arising From Admission of Evidence About Trade Secrets in Locations Other Than Ms. Mogal's CrashPlan**

In Ms. Mogal's Motion in Limine No. 5, Ms. Mogal moves, among other things, to exclude the government's attempt to end run the parties' August 21, 2019 Stipulation by introducing evidence regarding versions of the alleged trade secrets residing in devices or accounts other than Ms. Mogal's CrashPlan – the only repository identified in the Stipulation. In its First Motion in Limine, the government explicitly seeks to do so, asking to admit testimony regarding 140 additional "versions" of the alleged trade secrets that are precluded by its own agreement. This is problematic for numerous reasons, most critically that it prevents Ms. Mogal's forensic expert from having time to perform the necessary analysis to defend against these newly minted claims. Ms. Mogal stressed for months that she needed the government to identify the documents and devices/accounts at issue precisely for this reason – to give her expert the necessary time to conduct his analysis. The government executed the Stipulation providing the necessary information and Ms. Mogal relied on it in preparing her defense. Now, at the eleventh hour (on December 5, 2019), the government tries to sneak in evidence regarding 140 additional documents and two additional accounts. All of this evidence violates the Stipulation. And all of this evidence could have been provided months ago. Indeed, the government proffers no reason for the prejudicial delay. As set forth more fully in Ms. Mogal's Motion in Limine No. 5 and her opposition to the government's First Motion In Limine, this evidence should be excluded. If the Court, however, were to allow it to be introduced, Ms. Mogal may need to seek additional relief, including seeking additional time to prepare her response to the untimely produced evidence. This could potentially impact the trial date, among other things.

Dated: December 13, 2019

Respectfully submitted,
ORRICK, HERRINGTON & SUTCLIFFE LLP

By: _____*/s/ Walter F. Brown*_____
WALTER F. BROWN

Attorneys for Defendant
KATHERINE MOGAL